RICHARD A. FOGEL, ESQ. (16601987)
LAW OFFICES OF RICHARD A. FOGEL, P.C.
389 Cedar Avenue
Islip, N.Y. 11751-4627
(516) 721-7161
(631) 650-5254 (Fax)
*rfogel@rfogellaw.com*

Counsel for Plaintiff

-------------------------------------------------------------X

RAMESH SAWHNEY and NINA BHARDWAJ,

                    Plaintiffs,

          -against-

CHUBB INSURANCE COMPANY OF
NEW JERSEY,

                  Defendant.

-------------------------------------------------------------X

UNITED STATES DISTRICT  COURT
DISTRICT OF NEW JERSEY

VERIFIED COMPLAINT

       Plaintiffs Ramesh Sawhney and Nina Bhardwaj, by their counsel Law Offices of Richard A. Fogel, P.C., allege as follows:

<u>Introduction</u>

    1.    This is a homeowners' insurance coverage dispute arising out of house damaged by storms that caused a large tree to fall on the roof letting water to seep in throughout the house in which:

        a.  the insurer took possession of its insureds' extensive museum quality art collection, appraised by independent experts at more than $5.4 million, and paid the insureds $141,767.12 in compensation;

        b.  when the insured's objected, the insurer demanded an Examination Under Oath and twenty-one pages of information from the insureds almost two years after the claim and the first check was issued when

the insurer apparently realized that the artwork was much more valuable than it understood (Ex. "K");

c.  the insurer cannot provide the insureds with an accurate inventory of what artwork it took;

d.  the insurer cannot  provide a clear explanation of its indemnity offer;

**e.**  and, the house at issue is presently uninsurable because of the outstanding claim with the insurer, compelling the insureds to put the house up for sale while they live elsewhere.

<u>**Jurisdiction, Venue and Parties**</u>

2.      This is an action for declaratory judgment, common law breach of contract, breach of the New Jersey Consumer Fraud Act, and common law conversion.

3.      The declaratory action is brought pursuant to 28 U.S.C. 2201 *et seq*. to determine the rights, obligations and responsibilities arising out of a homeowner's insurance contract (Ex. "A") issued to plaintiffs by defendant Chubb Insurance Company of New Jersey ("Chubb") with respect to a loss that commenced on or about February 25, 2019, at a house in West Orange, New Jersey.

4.      Plaintiff Dr. Ramesh Sawhney is an individual presently residing in California and the husband of Dr. Nina Bhardwaj.

5.      Plaintiff Dr. Nina Bhardwaj is an individual presently residing in New York and is the wife of Dr. Ramesh Sawhney.

6.      Upon information and belief, Chubb is a New Jersey stock insurance company incorporated in New Jersey with its principal place of business in Whitehouse Station, New Jersey.

7.  The amount in controversy between the parties exceeds $75,000.

8.  There is complete diversity between the parties pursuant to 28 U.S.C. 1332.

9.  A substantial part of the events or omissions giving rise to the dispute herein occurred in the district in which this court is situated pursuant to 28 U.S.C. 1391(2).

## Facts

### The Chubb Policy

10.  Upon information and belief, the Chubb homeowners' policy at issue annexed as Ex. "A" was effective February 6, 2019, through February 6, 2020 for an annual premium of $15,636.89 [hereinafter "the policy"] for a house owned by plaintiffs located at 45 Oak Bend Road South, West Orange, New Jersey [hereinafter "the house"].

11.  The house is a large house that is approximately one hundred years old on a large property with a park like setting.

12.  The policy provides for replacement cost of contents up to $3,656,400.00 (Ex. "A" at 19).

13.  The policy provides for "blanket coverage" of the art collection of the plaintiffs which is defined in the policy as Chubb will "repair or replace" the item, whichever is less, without regard to depreciation and will further pay for any diminution in value as a result of any repair  (Ex. "A" at 48).

14.  The plaintiffs fulfilled any obligations and duties they have under the policy.

**The Occurrence**

15.     On or about February 25, 2019, plaintiffs provided Chubb with notice of claim of damage to the house caused by a large fallen tree during a rain and windstorm (photos annexed as Ex. "B").

16.     On or about February 26, 2019, Chubb sent an independent engineer to inspect the damage who advised plaintiffs that the tree damage caused extensive water leakage into the walls of the house.

17.     Plaintiffs are avid collectors of art, including, for example, works by well-known artists such as Picasso, Chagall, de Kooning, Matisse, Knox Martin and many works by prominent Asian and Indian artists, and in some cases, plaintiffs are personal friends with the artists themselves from whom they acquired the art.

18.     In addition, plaintiffs have an eclectic collection of rock and roll artifacts and memorabilia such as, for example, artwork by John Lennon and George Harrison, electric guitars and photographs and in some cases, are personal friends with the musicians from whom they acquired the items.

19.     Both the artwork and rock and roll collection are of such significance that parts of the collection have been loaned to museums from time to time.

20.     Prior to the tree damage in February 2019, both the artwork and rock and roll items were proudly displayed and stored throughout the house.

**Chubb's Initial Response to the Art Claim**

21.     On or about March 11, 2019, Chubb retained Asset IQ [hereinafter "AIQ"] as its art consultant to review artwork in the house that was affected by the

moisture. AIQ sent Diane Forstell who describes herself in emails as an "art appraiser".

22.     Chubb neither disclaimed the art claim nor issued a reservation of rights before sending Ms. Forstell.

23.     Upon information and belief, Ms. Forstell of AIQ is an appraiser but not a conservator, meaning she is not trained to repair artwork and accordingly not qualified to opine on the cost or feasibility of repair of fine art.

24.     Upon information and belief, Ms. Forstell has no particular expertise regarding rock and roll memorabilia.

25.     On or about March 16, 2019, AIQ made its first of several inspections of the artwork and rock and roll memorabilia at the house, inspecting the artwork and rock and roll memorabilia throughout the entire house.

26.     Plaintiffs retained at their own expense, independent art conservator, Gary McGowan, who repairs artwork and therefore is qualified to opine on the feasibility and the cost of such repairs and who, upon information and belief, has advised such clients as the Smithsonian Institute.

27.     Plaintiffs repeatedly asked Chubb to pay for McGowan's services and Chubb failed to do so.

28.     McGowan met and spoke with Chubb's claim representative and AIQ numerous times over the course of months in 2019 and 2020 about the repair, cleaning and condition of the artwork.

29.     McGowan gave Chubb estimates of an "initial cleaning" of some of the artwork.

30.     Upon information and belief based upon the emails of McGowan, the purpose of the initial cleaning was to clean the items enough to determine whether the artwork could be repaired at further cost or was otherwise irreparably damaged (Ex. "F" (June 27, 2019 email)).

31.     All of McGowan's services was paid for by plaintiffs and they have not been reimbursed for any of these costs.

32.     In or around April 2019, the parties began discussing moving the artwork from the house and storing the art.

33.      Upon information and belief based upon emails between the parties and the consultants, the original purpose of moving and storing the items was to send them one by one to McGowan's studio so he could begin the initial cleaning and assess whether repair was possible at further expense.

34.     On or about May 7, 2019, AIQ issued a spread sheet "report" that valued the art claim at $95,179 (Ex. "D").

35.     On or about May 8, 2019,  McGowan met with AIQ to review the art collection and AIQ stated it was only appraising "value and damage" (Ex. "C").

36.     AIQ has never explained how a consultant who is not a trained conservator of art can opine on the cost of "damage"  or on the cost of "repair".

37.     AIQ has never disclosed its research or methodology supporting its valuation of the artwork which was apparently completed in about six weeks from the first AIQ first visit until the first spreadsheet was issued.

38.     The AIQ spreadsheet is cryptic and contains no explanation of how the numbers were calculated and only occasional notations of "TL" next to some items which upon information and belief meant, "total loss".

39.     On or about May 13, 2021, the parties exchanged various emails with each other in which the plaintiffs made known to all that AIQ's spread sheet drastically undervalued the art.

40.     On or about May 24, 2019, Chubb issued a check to plaintiffs in the amount of $94,326.17 which was received by plaintiffs.

41.     Chubb never provided to plaintiffs any clear explanation of the check amount although the amount appears to be about $800 less than AIQ's May 7 spreadsheet.

42.     Chubb neither disclaimed the art claim nor issued a reservation of rights before issuing the May 24, 2019 check.

43.     On or about May 31, 2019, AIQ issued an amended spread sheet that increased the value of the art claim to "$107,260" again without any explanation of how it calculated those numbers or what the indemnity was precisely intended to compensate (Ex. "E").

44.     On or about June 19, 2019, Chubb issued a second check received by plaintiffs in the amount of $12,081.44.

45.     Once again, Chubb never provided to plaintiffs any clear explanation of the check although the amount appears to roughly coincide  with AIQ's May 31 spreadsheet.

46.     Chubb neither disclaimed the art claim nor issued a reservation of rights before issuing the June 19, 2019 check.

47.     In or around June 2019, the parties exchanged numerous emails about additional artwork not covered by AIQ's spreadsheets.

48.     In or around July 15, 2019, AIQ issued a third amended spread sheet that increased the value of the art claim to "$126,472.36" again without any explanation of the indemnity or how that number was calculated (Ex. "G").

49.     On or about July 23, 2019, Chubb issued a third check received by plaintiffs in the amount of $20,731.16.

50.     Once again, Chubb never provided to plaintiffs any clear explanation of the check although the amount appears to roughly coincide  with AIQ's July 15 spreadsheet.

51.     Chubb neither disclaimed the art claim nor issued a reservation of rights before issuing the July 23, 2019 check.

**Plaintiff's Obtain Appraisals from Their Own Independent Experts**

52.     In or around July 2019, the plaintiffs retained their own art expert at plaintiff's own expense, Bonnie Kagan, to value their collection.

53.     Upon information and belief, Ms. Kagan is a well-known and reputable art appraiser in the Manhattan and Hamptons art communities.

54.     Upon information and belief, Ms. Kagan made at least three separate trips to the house to view the art  and spent almost a year researching and documenting each work of art by reviewing art auction records for example, before finally issuing a two-volume report on or about March 24, 2020 (Ex. "H") which valued the items

listed as of the date of the occurrence at approximately $4.43 million dollars  most of which was the same art valued by AIQ.

55.     The Kagan report was revised at a later date to add a few additional pieces.

56.     Ms. Kagan did not review the Indian artwork nor any rock and roll memorabilia.

57.     Copies of the Kagan report were provided to Chubb at no cost to Chubb.

58.     In or around February 29, 2020, the plaintiffs retained at their own expense appraiser and conservator Kenneth Linsner, to value their Indian art collection as well as any other pieces not reviewed by Ms. Kagan and also to estimate the cost of repairs of the same because he is a qualified art conservator.

59.     Mr. Linsner is a well-known art appraiser and conservator in the Manhattan art community.

60.     Mr. Linsner inspected the artwork at both the house and the AIQ facility and spent some months researching and documenting each work of art by reviewing art auction records for example.

61.     On or about February 29, 2020, Mr. Linsner issued a report for 56 works of art estimating total replacement value at approximately $984,000 and total repair costs as appropriate of approximately $102,000 (Ex. "I").

62.     Copies of the Linsner report were provided to Chubb at no cost to Chubb.

63.     Linsner later amended his report to add a few additional items.

64.   In or around April 16, 2020, after Chubb received the Kagan and Linsner reports, AIQ issued a fourth amended spread sheet that increased the value of the art claim to "$141,101.31" again without any explanation of the indemnity or how the number was calculated (Ex. "J").

**Chubb Removes Plaintiffs' artwork**

65.   Upon information and belief, in or around May 2020, artwork was removed from the house at the direction of AIQ by an additional contractor hired by Chubb, Aiston Art Movers.

66.   Plaintiffs at this time have no idea what specific art or memorabilia was taken by Chubb's contractors and where the items were taken or stored.

67.   Plaintiffs at this time have no idea what the Chubb contractors did with the items that were taken by Chubb.

68.   Upon information and belief some items were taken to AIQ and others were sent to Airston's storage facility in a different states.

69.   Upon information and belief, the items at Airston's facility were left in boxes and not inventoried.

70.   Plaintiffs and McGowan communicated with Chubb and AIQ numerous times telling them that the items they took needed immediate attention from a qualified conservator to prevent further damage.

71.   Upon information and belief neither Chubb, nor AIQ took any action to clean or repair the items they took from plaintiffs.

72.   To date, the location of some artwork and memorabilia remain missing and unaccounted for since Chubb's agents removed items from the house.

**Chubb Issues A "Reservation of Rights" More Than One Year After the Claim**

**Was Made**

73.     On or about May 1, 2020, Chubb issued what it purports to be a "Reservation of Rights" letter to the plaintiffs for the art claim, notwithstanding that the claim had been made in February 2019 , more than a year prior and that Chubb had already issued three checks totaling $127,000 to the insureds for the art claim and that the insureds had spent tens of thousands of dollars on experts to respond to the Chubb handling of the claim.

74.     Upon information and belief, Chubb issued the untimely "reservation of rights" letter because it received the Kagan and Linsner Reports and realized that the art claim was worth far more than what AIQ told Chubb.

75.      The claim itself did not suddenly change in May 2020. Rather, Chubb's understanding of the claim changed when it realized that art was worth millions of dollars and that Chubb had "botched" the handling of the claim.

76.     On or about July 1, 2020, Chubb issued a fourth check received by plaintiffs in the amount of $14,628.95.

77.     Once again, Chubb never provided to plaintiffs any clear explanation of the check although the amount appears to roughly coincide  with AIQ's April 16, 2020 spreadsheet.

78.     The parties continued to exchange emails about the value of the art claim throughout 2020 and early 2021 with plaintiffs urging Chubb to take action to repair the items taken by Chubb and explaining that the water damage may be irreversible.

**Chubb Declines to Renew the Homeowners Policy**

79.     In or around February 2021, Chubb declined to renew the plaintiffs' homeowners' policy forcing plaintiffs to scramble to find new homeowners' coverage.

80.     Notwithstanding exhaustive efforts involving several very experienced insurance brokers, no insurer will issue a homeowners' policy for the house because of the outstanding art claim with Chubb, even if the new policy excluded all coverage for art.

81.     As a result of Chubb's refusal to renew and its concomitant failure to resolve the art claim, Chubb has effectively precluded the house from being insured and as a result, plaintiffs are presently in the process of the selling the house while they live elsewhere.

**Chubb "Lawyer's Up" Against its Own Insureds**

82.     On or about February 18, 2021, two years after the claim was first made, Chubb  retained  Pennsylvania counsel to send a twenty-one-page demand to plaintiffs including demands for "examinations under oath" (EUO) and interrogatories asking such frivolous questions as where each of the hundreds of works of art were located in the house (Ex. "K") even though it was Chubb's contractors who removed the works from the house and had inspected all the items throughout the house several times and chub had already paid money on the art claims without any reservation of rights.

83.     On or about March 31, 2021, plaintiffs, through their retained counsel, provided a detailed chronology of events to Chubb's counsel, requesting, among other things: (a) a comprehensive inventory with photos of what items were in Chubb's

possession including a request to check for certain items that are missing and have not been listed on any AIQ spreadsheet; (b) an explanation of the checks paid to date by Chubb and an explanation of the basis for AIQ's spreadsheets; and, (c) proposing that the parties resolve the claim by inspecting each piece of art and memorabilia with their respective qualified experts and agreeing on a course of action for each item, if possible (Ex. "L").

84.     Chubb, through its counsel, did not respond until July 16, 2021 at which time they declined the settlement proposal, still could not give a detailed inventory of everything that was taken by Chubb's contractors, still did explain the basis for AIQ's spreadsheet numbers since AIQ is not a conservator, and still insisting on an EUO (Ex. "M" without exhibits).

85.     In August, Chubb, through its counsel, sent a follow up letter offering to "delay" EUOs if plaintiffs will submit a detailed "proof of claim".

86.     Thus, two and half years after the initial claim, in lieu of a common-sense settlement inspection of the damaged artwork by qualified experts, Chubb requested sworn statements from its own insureds as to damages for damaged artwork and memorabilia that have been in Chubb's possession for more than one year, that were examined by Chubb numerous times, for which Chubb already made claim payments without reservation of rights and as to which Chubb already has in its possession, independent expert appraisals that were paid for by plaintiffs.

87.     Accordingly, plaintiffs/insureds now bring the instant action to resolve the art claim and force Chubb to live up to the requirements of its insurance policy to repair or replace each damaged item and to return the artwork and rock and roll

memorabilia that belongs to the plaintiffs as well pay reasonable attorney's fees for its conduct and damages for forcing its insureds into the position of choosing between a fair and reasonable settlement for their art claim and insuring their house.

### First Cause of Action (Declaratory Judgment)

88.      Plaintiffs reiterate each of the allegations contained in paragraphs "1" through "87" as if fully set forth herein.

89.      Notwithstanding the plain meaning of the terms of the homeowners' insurance policy issued by Chubb to plaintiffs, Chubb has refused and failed to fully "repair or replace" the damage artwork and rock and roll memorabilia and compensate plaintiffs for any diminution in vale.

90.       As a result of Chubb's conduct, a justiciable controversy now exists between plaintiffs and Chubb and  as to which plaintiffs have no adequate remedy at law.

91.      As a result of Chubb's conduct, plaintiffs have suffered damages and said damages are continuing.

92.      As a consequence of Chubb's conduct, plaintiffs now seek of this court a declaratory judgment determining the rights and legal relations of the parties to the Chubb homeowners' insurance contract with respect to fully "repair or replace" the damage artwork and rock and roll memorabilia and compensate plaintiffs for any diminution in value, said judgment to declare, inter alia that Chubb has the duty to indemnify plaintiffs pursuant to the appraisals and estimate of the qualified experts McGowan, Kagan and Linsner, pay the appropriate experts McGowan, Kagan and Linsner and such other and further relief as the court deems just and proper.

WHEREFORE, plaintiffs request that the court issue a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq., determining the rights and legal relations of the parties to the Chubb homeowner's insurance contract with respect to fully "repair or replace" the damage artwork and rock and roll memorabilia and compensate plaintiffs for any diminution in value, said judgment to declare, inter alia that Chubb has the duty to indemnify plaintiffs pursuant to the appraisals and estimate of the qualified experts McGowan, Kagan and Linsner, pay the appropriate experts McGowan, Kagan and Linsner and such other and further relief as the court deems just and proper.

## Second Cause of Action (Breach of Contract)

93.     Plaintiffs reiterate each of the allegations contained in paragraphs "1" through "92" as if fully set forth herein.

94.     As a result of Chubb's conduct, Chubb has materially breached its contractual obligations to plaintiffs  pursuant to the Chubb homeowners' policy by failing to fully "repair or replace" the damage artwork and rock and roll memorabilia and compensate plaintiffs for any diminution in value as well as pay the appropriate experts McGowan, Kagan and Linsner and such other and further relief as the court deems just and proper.

95.     As a result of Chubb's breach of contract, plaintiffs have suffered damages and said damages are continuing.

WHEREFORE, plaintiffs request judgment be entered against Chubb in amount to be determined at trial, plus interest, reasonable costs including attorney's fees and such other and further relief as the court deems just and proper.

**Third Cause of Action (Consumer Fraud)**

96.     Plaintiffs reiterate each of the allegations contained in paragraphs "1" through "95" as if fully set forth herein.

97.     As a result of Chubb's conduct, to wit: (1) failing to fulfill its contractual obligations to the plaintiffs to fully "repair or replace" the damaged artwork and memorabilia and compensate plaintiffs for any diminution in value in the two plus years since the initial claim was made; (2) failing to pay the appropriate experts McGowan, Kagan and Linsner; (3) causing plaintiffs to be unable to obtain homeowner's insurance for the house by dragging out the claim for more than two years; (4) taking possession of plaintiffs' possessions without taking any action to repair or replace them and provide plaintiffs with a complete inventory and keeping such possessions for no apparent reason while knowing that damages to the possessions are continuing; (5) forcing plaintiffs to retain and pay for counsel more than two years after the claim was first made in order to protect their own rights under the insurance contract; and, (5) delaying the fair and reasonable settlement of the insurance claim by frivolous demands for untimely "examinations under oath" and "proof of claim" long after Chubb waived any applicable coverage defenses; Chubb is in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8 et seq. ("CFA").

98.     Chubb's conduct constitutes unconscionable commercial practices, deception, fraud, false promises and or material misrepresentations to plaintiffs in violation of the CFA.

99.     Plaintiffs relied to their detriment upon Chubb's promises and material misrepresentations within the meaning of the CFA to live up to the terms of the Chubb

16

insurance policy as set forth in the policy itself and the promises and material misrepresentations made by Chubb in "adjusting" the claim.

100.    As a result of Chubb's violation of the CFA, plaintiff's incurred damages capable of being calculated to a reasonable degree of certainty.

101.    Prior to bringing this claim under the CFA, plaintiffs attempted to resolve this dispute and demanded that Chubb make defendants whole to no avail.

102.    As a result of Chubb's violation of the CFA, plaintiffs are entitled to statutory treble damages, attorneys fees and court costs.

WHEREFORE, plaintiffs request judgment be entered against Chubb in amount to be determined at trial for treble damages, plus interest, reasonable costs including attorney's fees and such other and further relief as the court deems just and proper.

### Fourth Cause of Action (Conversion)

103.    Plaintiffs reiterate each of the allegations contained in paragraphs "1" through "102" as if fully set forth herein.

104.    Chubb's intentional conduct in keeping the plaintiffs' artwork and memorabilia for no apparent reason while failing to compensate plaintiffs converted the plaintiffs' personal property.

105.    As a result of Chubb's conduct, plaintiff has suffered damages.

WHEREFORE, plaintiffs request judgment be entered against Chubb in amount to be determined at trial for damages a plus punitive damages, plus interest,

reasonable costs including attorney's fees and such other and further relief as the court

deems just and proper.

Dated: Islip, New York
      August 4, 2021

          *Richard A. Fogel*

          _____
          Richard A. Fogel, Esq. (16601987)
          LAW OFFICES OF RICHARD A. FOGEL, P.C.
          389 Cedar Avenue
          Islip, New York 11751-4627
          (516) 721-7161

          Counsel for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated: Islip, New York
      August 4, 2021

          *Richard A. Fogel*

          _____
          Richard A. Fogel, Esq. (16601987)
          LAW OFFICES OF RICHARD A. FOGEL, P.C.
          389 Cedar Avenue
          Islip, New York 11751-4627
          (516) 721-7161

          Counsel for Plaintiffs

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to L. Civ. R. 11.2, the undersigned counsel for Plaintiff hereby certifies that this

matter in controversy is not the subject of any other action pending in any court, or of any

pending arbitration or administrative proceeding.

Dated: Islip, New York
       August 4, 2021

*Richard A. Fogel*
_____
Richard A. Fogel, Esq. (16601987)
LAW OFFICES OF RICHARD A. FOGEL, P.C.
389 Cedar Avenue
Islip, New York 11751-4627
(516) 721-7161

Counsel for Plaintiffs

## LOCAL RULE 201.1(d)(3) CERTIFICATION

Pursuant to L. Civ. R. 201.1(d)(3), the undersigned counsel for Plaintiff hereby certifies

that the amount in controversy exceeds $150,000.00, exclusive of interests and costs, and

that relief in addition to monetary damages is sought in the within complaint.

Dated: Islip, New York
       August 4, 2021

*Richard A. Fogel*
_____
Richard A. Fogel, Esq. (16601987)
LAW OFFICES OF RICHARD A. FOGEL, P.C.
389 Cedar Avenue
Islip, New York 11751-4627
(516) 721-7161

Counsel for Plaintiffs

## <u>VERIFICATION</u>

I certify under penalties of perjury, I have read the Verified Complaint, know the contents thereof, and the same is true to my own knowledge, except as to the matters stated to be alleged on information and belief, and that as to those matters, I believe them to be true. I am aware that if any of the foregoing is willfully false, I may be subject to punishment under penalties of perjury.

Dated: August 5, 2021

_____
Ramesh Sawhney