

George McClellan
609.468.0127
george@mcbelegal.com

30 April 2023
Via ECF

The Honorable Leda Dunn Wettre, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, New Jersey 07101

Re:     Ramesh Sawhney, et al. v. Chubb Insurance Company of New Jersey
        Docket Number: 2:21-cv-14675

Dear Judge Wettre:

Pursuant to Section V.12 of the Pretrial Scheduling Order that Your Honor entered on April 4, 2022 (Dkt. 24), Defendant Chubb Insurance Company of New Jersey ("Defendant") respectfully submits this letter to request permission to file a motion to compel an appraisal of the amount of the loss and stay proceedings pending the completion of that appraisal. As explained below, this relief is mandated by black letter law and merited by principles of judicial economy.

As this Court knows, Plaintiffs admit that their case is a "disaster." Under both the Federal Rules of Civil Procedure and the terms of the parties' contract, Plaintiffs Ramesh Sawhney and Nina Bhardwaj ("Plaintiffs") are required to disclose to Defendant (1) the pieces of property for which Plaintiffs contend they are entitled to recover proceeds from the insurance policy (the "Policy") that Defendant issued to Plaintiffs and (2) the amount of damage that Plaintiffs contend they are entitled to recover for each piece. To date, Plaintiffs have refused to do so.[1]

As Defendant previously advised the Court under correspondence dated April 26, 2023, during the mediation, the mediator, Lisa Taylor, Esq. ("Mediator Taylor"), prepared an analysis of thousands of pieces of property based on Plaintiffs' submissions in the mediation. Based on representations made by Ms. Taylor during the mediation on April 6, 2023, it is Defendant's

---

[1] Plaintiffs' refusal to provide this information **under the Federal Rules of Civil Procedure** will be addressed in another letter seeking leave to file a motion to compel that will be filed imminently. If Defendant is not granted leave to file the motion to compel an appraisal, Plaintiffs' refusal to provide this information **under the terms of the parties' contract** will be addressed in another letter in which Defendant seeks leave to file a motion to amend its pleading to state a cause of action for breach of contract and specific performance.

current understanding that Plaintiffs have finally identified (1) the pieces of property for which

Plaintiffs contend they are entitled to receive proceeds under the Policy and (2) the amounts of the

loss that Plaintiffs contend were sustained for each piece of property. Consequently, Defendant

learned for the first time on April 6, 2023 that which Plaintiffs contend is damaged and that which

Plaintiffs contend is the amount of the loss for each piece that Plaintiffs contend was damaged.

Based on Mediator Taylor's representations about Plaintiffs' identification of this information, the

parties have reached an impasse regarding the amount of the loss.

The parties' contract contains the following standard appraisal provision that establishes the

dispute resolution vehicle to adjudicate a justiciable controversy regarding the amount of the loss

once the parties have reached an impasse as to the amount of the loss:

> **Appraisals**
> If you or we fail to agree on the amount of loss, you or we may demand an appraisal of the loss. Each party will select an appraiser within 20 days after receiving written request from the other. The two appraisers will select a third appraiser. If they cannot agree on a third appraiser within 15 days, you or we may request that the selection be made by a judge of a court having jurisdiction. Written agreement signed by any two of the three appraisers shall set the amount of the loss. However, the maximum amount we will pay for a loss is the applicable amount of coverage even if the amount of the loss is determined to be greater by appraisal. Each appraiser will be paid by the party selecting the appraiser. Other expenses of the appraisal and the compensation of the third appraiser shall be shared equally by you and us. We do not waive our rights under this policy by agreeing to an appraisal.

Dkt. 18-1 at p. 86.

If granted permission to file a motion to compel appraisal, Defendant will catalogue the

plethora of jurisprudence within New Jersey as well as throughout the country in which courts

compel appraisals pursuant to this standard provision in insurance policies. However, in the

interest of brevity, in this letter seeking leave to file a motion to compel an appraisal, Defendant

will confine its legal analysis to focus only on two recent decisions written by District Judges

Wolfson and Chesler in which they compelled appraisals pursuant to nearly identical standard

appraisal provisions in insurance policies. As Judge Wolfson observed, the purpose of this

standard appraisal provision is "to submit disputes to third parties and effect their speedy and

efficient resolution without recourse to the courts." *Shearer v. State Farm Fire & Cas. Co.*, No.

2:16-CV-9469, 2017 WL 3611743, at \*2 (D.N.J. Aug. 22, 2017) (citing *Elberon Bathing Co., Inc.

v. Ambassador Ins. Co., Inc.*, 389 A.2d 439, 446 (N.J. 1978)). Judge Wolfson started her legal

analysis with the fundamental legal proposition that "'[l]ike any contract, when its terms are clear

the court must enforce the contract as it finds it.'" *Ibid.* (quoting *Flint Frozen Foods v. Firemen's

Ins. Co. of Newark*, 86 A.2d 673, 674 (N.J. 1952)). Judge Wolfson recognized that federal and

state courts in New Jersey "have held that appraisal clauses in fire insurance policies are

2

enforceable against both insurers and their insured." *Ibid.* (citing *Drescher v. Excelsior Ins. Co. of N.Y.*, 188 F. Supp. 158, 159 (D.N.J. 1960); *Hala Cleaners, Inc. v. Sussex Mut. Ins. Co.*, 277 A.2d 897, 898 (N.J. Super. Ct. Ch. Div. 1971) ("an insured as well as an insurance company can insist that the appraisal procedures described in the standard form of fire policy be followed").

In compelling the plaintiff-insured to submit to an appraisal, Judge Wolfson rejected the plaintiff-insured's arguments that (1) the matter was not ripe for appraisal; (2) the plaintiff-insured did not have to comply with that provision because the defendant-insurer breached the policy; and (3) the defendant-insurer did not exercise its appraisal rights within a reasonable period of time. Judge Wolfson held that — similar to the appraisal provision in the policy that Defendant issued to Plaintiffs — under the appraisal provision in the policy, "appraisal may be invoked by either party, at any time, to resolve disputes over the amount of the loss." *Id.* at *3. Judge Wolfson further observed that the plaintiff-insured "identified no law or provision of the parties' agreement limiting the time for Defendant to enforce the appraisal provision ...." *Ibid.* In addition, Judge Wolfson observed that the litigation was still "in its infancy." *Ibid.* Although the parties are about to proceed to depositions at the sole behest of Plaintiffs, paper discovery is hardly complete. As described above, due to Plaintiffs' refusal to provide a sworn certification under the terms of the parties' contract and Plaintiffs' refusal to provide full, accurate, and sworn responses to interrogatories as required by the Federal Rules of Civil Procedure, there are numerous written discovery disputes pertaining specifically to the amount of the loss that still need to be resolved. After those discovery disputes are resolved through additional motion practice, it will spawn additional discovery-related motion practice to compel second depositions of Plaintiffs' witnesses reagrding subsequently produced information and documents. Finally, Judge Wolfson commented that — similar to the situation before this Court — an appraisal "is also timely here because it has the potential to resolve the dispute between the parties, or, at minimum, to provide a factual basis for further discussion between the parties to determine if resolution is possible." *Ibid.* In addition, in the interest of judicial economy, Judge Wolfson sensibly stayed the proceedings pending the completion of the appraisal. *See ibid.*

Even more recently, in *DC Plastic Prod. Corp. v. Westchester Surplus Lines Ins. Co.*, No. 2:17-CV-13092 (SRC), 2021 WL 2018918, at *2 (D.N.J. May 19, 2021), Judge Chesler granted the plaintiff-insured's motion to compel an appraisal and appoint the umpire. In rejecting the defendant-insurer's argument that the Court should first adjudicate coverage issues before compelling an appraisal, Judge Chesler held that because the parties disagreed as to the amount of loss that Plaintiff suffered, "even if outstanding liability issues exist, there is no reason to delay determining the amount of the loss in the meantime, as appointing an umpire will in no way prevent [the defendant insurer] from contesting liability later on to all or part of [plaintiff-insured's]

3

claims." *Ibid.* Consequently, Judge Chesler determined that it was "appropriate for the parties to move forward with the appraisal process at this time ..." and directed the parties to proceed with the appraisal process as set forth in the policy. *See ibid.* Similar to Judge Wolfson, Judge Chesler also stayed the proceedings pending the completion of the appraisal.

Based on Mediator Taylor's representation during the April 6, 2023 mediation session that Plaintiffs had finally identified (1) the pieces of property that Plaintiffs contend they are entitled to receive proceeds under the Policy and (2) the amounts of the loss that Plaintiffs contend were sustained for each piece of property, the parties reached an impasse on April 6, 2023 regarding the amount of the loss. Consequently, during the April 6, 2023 mediation session, Defendant demanded that Plaintiffs submit to an appraisal of the amount of the loss. Plaintiffs refused to agree to an appraisal. Plaintiffs did not communicate the basis for their refusal (although, as explained below, it appears that Plaintiffs fundamentally misunderstand the nature of the relief that Defendant seeks). Consequently, Defendant raised this issue in its April 25, 2023 status letter to the Court and during the ensuing status conference the following day.

In addition to the fact that Plaintiffs are legally obligated to fulfill their contractual obligation to submit the adjudication of the dispute regarding the amount of the loss to appraisal, an appraisal of the amount of the loss will resolve what would otherwise be one of the most intractable, laborious, and tedious justiciable controversies in this lawsuit. Namely, the parties dispute the amount of the loss of over 200 unique pieces of property. An appraisal will eliminate the need for expert discovery regarding the value, condition, and authenticity of over 200 pieces of property. Similarly, an appraisal will eliminate the need for the expert evidence at trial by at least four experts who would testify piece-by-piece over an extended period of time. Moreover, as Judge Wolfson recognized in *Shearer*, an appraisal has a substantial likelihood to resolve the lawsuit in its entirety or, at minimum, to provide a factual basis for further discussion between the parties to determine if resolution is possible. Once the parties receive the definitive answer regarding the amount of the loss that the parties bargained to receive, the litigation will be effectively over. To the extent that any ancillary issues remain (such as Plaintiffs' conversion and bad faith claims), Defendant anticipates that they can be dispensed in short order because the value of the case will already have been determined at appraisal as the parties agreed when they entered into their contract.

The arguments in the letter that Plaintiffs submitted on April 25, 2023 in response to Defendant's April 25, 2023 letter strongly suggest that Plaintiffs do not understand the relief that Defendant seeks. Specifically, in their April 25, 2023 letter, Plaintiffs argued, in pertinent part, that both parties already have obtained appraisals from their experts of some of the pieces of property for which Plaintiffs seek to recover insurance proceeds. *See* Dkt. 63 at p. 2, ¶2. Plaintiffs then

4

argued that Defendant's "request for yet more appraisals makes no logical sense except that [Defendant] seeks further delay and to drive up the costs." *Ibid.* However, the appraisal proceeding that Defendant has invoked does not seek "more appraisals" from additional experts similar to the efforts that the parties had already undertaken in their claim investigations. To the contrary, the parties' contract establishes a definitive dispute resolution vehicle by which disagreements about the amount of the loss for each piece of property are conclusively resolved. Plaintiffs have no response to this point.

In conclusion, Defendant respectfully seeks leave to file a motion to compel an appraisal of the amount of the loss and to stay the proceedings until the completion of the appraisal. Both the law and principles of judicial economy dictate that an appraisal of the amount of the loss is the sole viable approach to adjudicating the justiciable controversy regarding the amount of the loss. The relief that Defendant seeks is supported by black letter law from this District as well as courts throughout the country. To rule otherwise wrongfully deprives Defendant of the benefit of its bargain with Plaintiffs. In addition to being legally required, the relief that Defendant seeks presents the single most meaningful opportunity to save exponential amounts of time and money. In the short term, an appraisal of the amount of the loss will immediately eliminate a substantial amount of unnecessary discovery and related motion practice. In the long term, an appraisal will eliminate lengthy expert testimony at trial and a torrent of *Daubert* and *in limine* motions. Moreover, an appraisal will resolve the central justiciable controversy regarding the amount of the loss for a <u>fraction</u> of the cost that it would take to litigate this dispute before this Court and do so within a <u>fraction</u> of the time. Furthermore, the legal standard of review that governs appraisals further encourages the finality of the result. Finally, as Judge Wolfson observed, an appraisal has a substantial likelihood to resolve the lawsuit or, at minimum, to provide a factual basis for further discussion between the parties to determine if resolution is possible. It is disappointing that Plaintiffs have reneged on their contractual commitment, refuse to agree save these costs and this time and, instead, seek to burden the Court and a jury to endure prolonged expert testimony from at least four (and more likely six) experts as they opine at trial as to the amount of the loss of over 200 individual pieces of property.

Respectfully submitted,

McClellan Bernstiel LLP

*George McClellan*

George McClellan

c:    Richard A. Fogel, Esq. (via ECF)